El Pueblo de Puerto Rico, demandante y apelado, *v.* Jovito Calderón Allende, acusado y apelante.

Núm. 11,017.—*Sometido:* Febrero 1, 1946. *Resuelto:* Marzo 29, 1946.

*César Andréu Ribas,* abogado del apelante; *Hon. Procurador General E. Campos del Toro, Luis Negrón Fernández, Procurador General Auxiliar* y *J. Rivera Barreras, Fiscal Interino del Tribunal Supremo,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

El acusado en este caso fué denunciado por infracción a los incisos (*a*) y (*f*) del artículo 10 de la Ley de Automóviles (Ley núm. 55 de 27 de abril de 1942, (1) pág. 527).(¹) La denuncia alega que allá para el 19 de noviembre de 1944 en ocasión en que el acusado conducía un camión de la Ma-

---

(¹)Estos incisos disponen:

"(*a*) Las personas que manejen vehículos en los caminos públicos, deberán en todo tiempo ejercer el debido cuidado y tomar precauciones razonables para garantizar la seguridad de vidas y propiedades.

"*       *       *       *       *       *       *

"(*f*) La persona que conduzca un automóvil, al detenerse en un camino público en donde hay mucho tráfico, o en donde haya probabilidades de que le sigan otros automóviles, deberá echarse hacia la derecha todo lo que fuere posible, extendiendo su brazo hacia afuera, ligeramente inclinado hacia abajo con la

rina de Guerra por la carretera militar, en dirección a Bayamón desde Toa Alta, no ejerció el debido cuidado ni tomó las precauciones razonables para garantizar la seguridad de vidas y propiedades no echándose debidamente a la derecha al cruzar con la guagua P-1777, dando lugar con su negligencia y descuido a que arrollara a dos de los pasajeros de dicha guagua, a quienes fué necesario, en consecuencia, amputarles sus respectivos brazos izquierdos.

La corte declaró al acusado culpable del delito imputándole y lo condenó a cumplir tres meses de cárcel y a pagar las costas. El acusado apeló y en este recurso alega que la corte inferior erró ya que la prueba practicada no establece negligencia ni descuido criminal por parte del acusado y que la corte inferior actuó movida por prejuicio, pasión y parcialidad al sentenciar al acusado y al juzgar la prueba practicada.

■■ Para determinar si la corte cometió el primer error señalado examinaremos, en síntesis, la prueba presentada. La de cargo consistió en la declaración de tres testigos: Alejo Padilla y Juana Pagán, las dos personas lesionadas, y Amparo Soto Cruz.

Alejo Padilla declaró que el día de autos iba en una guagua hacia Dorado desde Bayamón; que iba sentado en el segundo asiento y llevaba el brazo izquierdo recostado de la barandilla de la guagua; que la primera vez que vió el *truck,* que guiaba el acusado, fué cuando estaba encima de él y le dió el golpe; que la guagua había resbalado en el preciso instante en que el truck le pasaba por el lado y que

palma de la mano hacia atrás y los dedos unidos. Al doblar a la izquierda la esquina de una calle o en la zona urbana de un municipio, deberá extender el brazo hacia afuera, en posición horizontal, con la palma de la mano hacia el frente y los dedos unidos; para doblar a la derecha deberá extender el brazo en ángulo recto, con la palma de la mano hacia afuera y los dedos unidos. Un vehículo de motor no deberá detenerse al lado de otro vehículo, excepto en caso de emergencia, ni deberá en ninguna forma, obstruir innecesariamente un camino público.''

el truck le pasó "raspando"; que la guagua tuvo que hacer un ademán para defenderse del truck.

La segunda testigo en declarar, Amparo Soto Cruz, dijo que el día de autos, ella ocupaba el asiento delantero de la guagua que iba de Bayamón hacia Dorado y que en la misma guagua iban Alejo Padilla y Juana Pagán; que llegando al sitio del accidente vió venir el truck del *Navy* bastante rápido; que había una pala mecánica parada a la derecha de Dorado a Bayamón, o sea, en la ruta del truck, y un "fanguero" en la derecha de Bayamón a Dorado, o sea, en la ruta de la guagua; que el truck llegó a la pala primero que la guagua y se desvió a la izquierda para pasarle; que cuando le estaba pasando a la pala llegó la guagua al sitio y cruzó con el truck; que en seguida ella oyó gritos en la guagua y al mirar hacia atrás vió sangre en el piso; que el truck de la Marina no paró sino que siguió y volvió más tarde al sitio. Dijo también que en el intervalo que transcurrió entre el momento en que sintió los gritos y paró la guagua ésta se tambaleó; que la guagua presentaba un "guayazo" a todo lo largo del lado izquierdo. En su declaración aparece lo siguiente:

"P. ¿Usted quiere decirme cuándo fué que usted por primera vez vió al truck?

"R. Nosotros llegando allí al sitio del choque, el truck venía como a una distancia de la 'palama' (sic) como de ahí, *él llegó primero a la pala que nosotros.*

"P. ¿La pala mecánica estaba parada en la derecha de allá para acá?

"R. Sí señor.

"P. ¿La pala mecánica estaba parada en el camino del chófer del truck?

"R. Sí, señor. (Bastardillas nuestras.)

La última testigo de El Pueblo fué doña Juana Pagán, la otra víctima del accidente. Declaró que iba en la misma guagua que don Alejo y Amparo Soto y que iba sentada en el asiento posterior al de don Alejo, con su codo izquierdo

apoyado en la ventanilla; que no vió al truck venir ni quién lo guiaba sino que sintió un ruido de motor al lado izquierdo, miró y vió el truck pasando, y al mismo tiempo sintió el golpe en el brazo; que ella no pudo apreciar nada de cómo ocurrió el accidente.

Terminada la prueba de cargo, el acusado declaró como único testigo de la defensa y su declaración fué la siguiente:

Que el día de autos venía hacia San Juan desde Vega Baja guiando el truck del Navy; que en el truck venían once marinos y en el asiento delantero venían dos oficiales con él; que al llegar al sitio donde estaba la pala mecánica en la carretera de Bayamón vió la guagua que venía; que la guagua llegó al frente de un bache bastante grande, pues había llovido, y se desvió hacia la izquierda cruzando bastante cerca del truck; que el truck no podía desviarse debido a la pala mecánica estacionada a su derecha; que ni él ni los oficiales oyeron golpe alguno; que siguió hasta San Juan y al llegar al Décimo Distrito Naval le preguntaron si ése era el truck que había golpeado una señora; que entonces fueron informados del accidente regresando los dos oficiales y él al sitio para hacer la investigación; que ni los ocupantes del truck ni él se dieron cuenta de lo ocurrido; que la guagua no presentaba ninguna raspadura y que todo se hubiera evitado si los pasajeros lesionados no hubieran llevado sus brazos por fuera de la guagua y si ésta hubiera seguido derecho y no se desvía.

Esta prueba demostró que el truck guiado por el acusado había llegado al sitio donde estaba estacionada la pala mecánica antes que la guagua y que no podía echarse más a su derecha debido a dicha pala mecánica. Esto no obstante la guagua al continuar su ruta opuesta, se desvió hacia su izquierda, o sea hacia el truck, para evitar caer en un fanguero que había en la ruta de la guagua. La única testigo de cargo que vió cómo ocurrió el accidente, Amparo Soto Cruz, declaró que la guagua se echó a la derecha "cuando

ya había pasado el accidente.'' De manera que al ocurrir éste la guagua estaba caminando más hacia su izquierda y tratando de pasarle al truck que conducía el acusado en dirección contraria y cuando éste ya había llegado y estaba pasando del sitio donde se encontraba estacionada la pala mecánica.

Como hemos visto, a un lado de la carretera se hallaba la pala mecánica y justamente al lado opuesto existía un fanguero. En tales circunstancias el lado de la carretera por donde marchaba la guagua lo mismo que el lado por donde iba el truck estaban obstruídos y el sitio para pasar entre los dos obstáculos no tenía la amplitud necesaria para permitir el paso de los dos vehículos al mismo tiempo sin que se causara, como se causó, un accidente. En una situación como ésta el vehículo que primero llega a ese sitio, tiene derecho preferente a pasar (*right of way*) y el otro debe reducir la velocidad o parar, si fuere necesario, para evitar el accidente.

En Huddy, *Cyclopedia of Automobile Law*, Vol. 3-4, pág. 193, sec. 119 (Novena Edición) se expone la regla aplicable en esta forma:

"Cuando dos vehículos se acercan el uno al otro en un sitio estrecho en la carretera, o en un puente angosto, o *en un área limitada entre dos carros estacionados,* donde es difícil o imposible que ellos puedan pasar con seguridad, *el vehículo que primero entra en dicho espacio tiene el derecho a la vía* (*right of way*) y está autorizado a proseguir, y es el deber del otro vehículo acortar su marcha, o, si necesario, detenerse." (Bastardillas nuestras.)

Bajo las circunstancias concurrentes en este caso somos de opinión que la prueba no demostró que el apelante al manejar el truck dejara de ejercer el debido cuidado o de tomar las precauciones razonables para garantizar la seguridad de vidas y propiedades o que dejara de echarse hacia su derecha todo lo que fuera posible según se imputó en la denuncia.

*Debe revocarse la sentencia y absolverse al acusado.*